2010 Ark. App. 128

**Jennifer EMMERT, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES, Appellee.**

**No. CA 09–944.**

Court of Appeals of Arkansas.

Feb. 11, 2010.

Leah Lanford, Arkansas Public Defender Com'n, Little Rock, AR, for Appellee.

JOHN B. ROBBINS, Judge.

The Fulton County Circuit Court terminated appellant Jennifer Emmert's parental rights to her children A.N., J.N., Ke.E., and S.E., ages 8, 7, 6, and 5, respectively, on May 21, 2009. On June 9, 2009, the trial court terminated Mrs. Emmert's parental rights to her six-month-old son, Ka.E. Mrs. Emmert has timely appealed from both termination orders.

Mrs. Emmert's appellate counsel has filed a motion to withdraw and a no-merit brief pursuant to *Linker–Flores v. Arkansas Dep't of Human Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6–9(i) (2009). The brief explains why the termination decisions and the only other adverse ruling at the termination hearing cannot support a meritorious appeal. The clerk of this court mailed a copy of counsel's motion and brief to Mrs. Emmert, informing her of her right to file pro se points for reversal. Mrs. Emmert has filed no pro se points. Be-

cause we agree that the appeal is wholly without merit, we affirm the termination orders and grant appellant's counsel's motion to withdraw.

This case originated on July 19, 2004, when appellee Arkansas Department of Human Services (DHS) took an emergency hold of S.E. due to medical neglect. The trial court subsequently entered an order of emergency custody placing S.E. with DHS, and on September 14, 2004, S.E. was found by the trial court to be dependent/neglected. Several months later, Mrs. Emmert and her husband, Gary Emmert, regained custody of S.E. pursuant to an order of the trial court. The DHS case remained open, with orders that the Emmerts cooperate with DHS and comply with the case plan. Mr. Emmert is the father of appellant's three youngest children, and while his parental rights were also ultimately terminated, he is not a party to this appeal.

On May 18, 2005, the trial court entered a review order finding that neither parent had substantially complied with the case plan. Throughout the next year, only partial compliance was obtained and the trial court entered progressively detailed orders, which included directions to maintain stable housing and employment. On April 26, 2006, the trial court entered an order of emergency custody removing A.N., J.N., Ke.E., and S.E. from Mrs. Emmert's custody and placing the children with DHS. Emergency custody was awarded based on information that Mrs. Emmert had reported depression, frequent crying, and hearing voices that she could not quiet telling her, "can't you make these kids shut up." On May 16, 2006, the trial court entered an order adjudicating A.N., J.N., and Ke.E. dependent/neglected. In the adjudication order, the trial court found that neither parent had shown any willingness to be employed and provide income for the fami-

ly, that the home environment had been unstable with the family moving from place to place, that Mrs. Emmert hears voices raising concerns that she might harm the children, and that the parents do not seem to be able to understand what is required of them to meet their children's basic needs.

On December 1, 2006, the trial court permitted Mrs. Emmert to have visits with S.E. at her home at the discretion of DHS, with frequent DHS monitoring. Subsequent orders were entered wherein the trial court found that Mrs. Emmert was in noncompliance with the case plan and that the condition of the home was life-threatening to the children, citing examples such as knives and medications being left within reach of the children. The children remained in DHS custody, and on January 13, 2009, just seven weeks after Ka.E. was born, the trial court entered an order placing Ka.E. in emergency DHS custody. Emergency custody was premised on credible allegations that Mr. Emmert had sexually abused Mrs. Emmert's five-year-old half-sister, and that Mrs. Emmert knew about the allegations but took no steps to protect her infant child. Ka.E. was adjudicated dependent/neglected on February 23, 2009.

On February 25, 2009, DHS filed a petition for termination of Mrs. Emmert's rights to all five of her children. After a hearing held on March 20, 2009, the trial court issued its orders terminating Mrs. Emmert's parental rights.

Adoption specialist Amanda Clark testified at the termination hearing. Ms. Clark gave the opinion that all five children are adoptable, and that thirteen families had been identified as candidates willing to adopt them. Mrs. Clark stated that there was a strong likelihood of successful placement.

Heather Robertson is a manager at a Bullseye store where Mrs. Emmert was briefly employed. Ms. Robertson indicated that Mrs. Emmert's employment was terminated because she was caught stealing cigarettes from the store. Ms. Robertson further testified that Mrs. Emmert would cash a child-support check at the store every week, even when the children were not in her custody, and that the money was used for things such as liquor and lottery tickets.

Mrs. Emmert testified on her own behalf, and she admitted receiving child support when she was not entitled to it and to claiming her children as dependents on her tax return even though they had been in DHS custody the majority of the time. Mrs. Emmert indicated that she recently split with Mr. Emmert and has no plans to reunite with him because she wants to get her children back. Mrs. Emmert gave a sporadic history of employment at various places, and acknowledged difficulty keeping current on her utilities. She has lived in seven different homes since the DHS case was opened in 2004.

Ashley Johnson was the case worker assigned to Mrs. Emmert's case. Ms. Johnson maintained that DHS had provided services and made reasonable efforts to return the children to their parents, and that she personally fought hard for the parents to keep their children. However, she stated that Mrs. Emmert has not demonstrated a willingness to provide a stable home for the children on a consistent basis. Ms. Johnson stated that there were problems with the home containing dangerous objects, and that there was an ongoing problem with keeping utilities connected. Ms. Johnson testified that despite the efforts by DHS, Mrs. Emmert continues to make bad choices that put her children at risk. Ms. Johnson stated that she has nothing left to offer Mrs. Emmert, and thought that there are no services that are likely to reunify Mrs. Emmert with her children. She further stated that the children need permanency and that "enough is enough." Ms. Johnson gave the opinion that the return of the children to Mrs. Emmert's home would be contrary to their health, safety, and welfare, and she recommended termination of parental rights.

An order forever terminating parental rights must be based on clear and convincing evidence that termination is in the child's best interest. Ark.Code Ann. § 9–27–341(b)(3)(A) (Repl.2008). Factors to consider in determining best interest are the likelihood of adoption and potential harm caused by returning the child to the custody of the parent. *Id.* Additionally, DHS must prove at least one statutory ground for termination by clear and convincing evidence. Ark.Code Ann. § 9–27–341(b)(3)(B) (Repl.2008). The purpose of terminating a parent's rights to his or her child is to provide permanency in the child's life where returning the juvenile to the family home is contrary to the child's health, safety, or welfare, and it appears that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. Ark.Code Ann. § 9–27–341(a)(3)$_6$ (Repl.2008). We do not reverse a termination order unless the trial court's findings were clearly erroneous. *Meriweather v. Arkansas Dep't of Health & Human Servs.*, 98 Ark.App. 328, 255 S.W.3d 505 (2007).

In the present case the trial court found termination of parental rights to be in the best interest of the children, considering the likelihood of adoption and potential harm of continuing contact with the parents. The trial court found multiple statutory grounds to support its termination order. In relation to the four older children, the trial court found that DHS met

its burden of proof as to Ark.Code Ann. § 9–27–341(b)(3)(B)(i), which provides:

> That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

With regard to all five children, the trial court made the following finding pursuant to § 9–27–341(b)(3)(B)(vii):

> That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent.

Finally, with regard to all five children, the trial court found that under § 9–27–341(b)(3)(B)(ix)(*3*), Mrs. Emmert subjected the juveniles to aggravated circumstances. Specifically, the trial court determined that there is little likelihood that services to the family would result in successful reunification pursuant to subsection (ix)(*3*)(*B*)(*i*).

■ In Mrs. Emmert's counsel's brief, she asserts that the trial court's findings were not clearly erroneous and that there can be no meritorious argument challenging the sufficiency of the evidence to terminate Mrs. Emmert's parental rights. We agree. The evidence demonstrated that all of the children are likely to be adopted and that their welfare and safety would be jeopardized if returned to their mother's custody. This case has persisted for five years without successful reunification, and in the interest of permanency termination is in the best interest of the children.

Moreover, DHS adequately proved the statutory grounds as found by the trial court. There was ample evidence that despite meaningful DHS efforts, Mrs. Emmert had failed to remedy the conditions that caused removal. Moreover, she has manifested the incapacity or indifference to remedy subsequent issues that arose in this case, which demonstrates that the return to her custody is contrary to the children's welfare. In particular, Mrs. Emmert has consistently failed to maintain stable employment or housing, and her living conditions have endangered the children. Finally, consistent with the testimony of the case worker, there is little likelihood that continued services would result in successful reunification. For any and all of these reasons, the trial court was authorized to terminate Mrs. Emmert's parental rights to promote the best interest of the children.

Mrs. Emmert's counsel correctly asserts in her brief that, other than the terminations themselves, there was only one adverse ruling. During Mrs. Emmert's testimony, DHS counsel asked her whether she was legally entitled to claim her children as dependents on her 2008 tax return given that the children had been out of her custody for eight months during that year. Appellant's counsel objected with the qualification, "unless he can show a foundation that she knows legally what she's allowed and what she's not allowed with the IRS." The trial court allowed the question over appellant's objection, and Mrs. Emmert testified that because she was paying child support she thought she could claim her children as dependents, but that after filing her return she later

found out otherwise. As appellant's counsel now asserts, the trial court's action in allowing the question did not adversely affect Mrs. Emmert's rights because her answer was that she made an innocent mistake and did not intentionally engage in any illegality. Moreover, the issue of the tax return was so minor in the face of the other evidence supporting termination as to render any possible error harmless.

Based on our review of the record and the brief presented to this court, we conclude that there has been full compliance with Rule 6–9(i) and that the appeal is without merit. Appellant's counsel's motion to be relieved is granted and the termination orders are affirmed.

Affirmed.

VAUGHT, C.J., and PITTMAN, J., agree.